## LOUISVILLE TRUST CO. v. VAN KANNEL REVOLVING DOOR CO.

### (Circuit Court of Appeals, Sixth Circuit. March 7, 1916.)

### No. 2708.

1. PATENTS ☞328—VALIDITY AND INFRINGEMENT—REVOLVING DOOR.
    The Van Kannel patent, No. 656,062, for a revolving door, the essential feature of which is a device which causes the wings to automatically collapse when subjected to abnormal pressure, was not anticipated, and discloses patentable invention. Claims 2 and 8 also *held* infringed, and claim 7 not infringed.

2. PATENTS ☞328—VALIDITY AND INFRINGEMENT—REVOLVING DOOR.
    The Van Kannel patent, No. 836,843, for a revolving door, claims 1 and 2 *held* void for lack of invention over the prior patent to the same patentee, No. 656,062, and claim 13, if valid, *held* not infringed.

Appeal from the District Court of the United States for the Western District of Kentucky; Walter Evans, Judge.

Suit in equity by the Van Kannel Revolving Door Company against the Louisville Trust Company. Decree for complainant, and defendant appeals. Reversed in part.

Helm & Helm, of Louisville, Ky., for appellant.

Titian W. Johnson, of Washington, D. C. (Trabue, Doolan & Cox, of Louisville, Ky., of counsel), for appellee.

Before KNAPPEN and DENISON, Circuit Judges, and KILLITS, District Judge.

KNAPPEN, Circuit Judge. Suit for infringement of patents Nos. 656,062 (1900) and 836,843 (1906) both granted to Van Kannel for improvements in revolving doors.

The district court found both patents valid and infringed, and entered the usual decree for injunction. Defendant being admittedly a good-faith user, plaintiff waived recovery of damages and profits, and so no accounting was ordered. Defendant has appealed.

[1] The specification of the 1900 patent states that it relates to "that class of revolving doors which have a series of radiating wings rotating in a casing." The stated object of the invention is to "so construct the wings and casings of such a door that they will yield to the rush of a panic-stricken crowd, the end members of the casing swinging outward and the wings of the door all being pushed to the front, so as to provide a wide and unobstructed passage on each side of the center of the door structure." To accomplish this purpose the wings of the door are held normally in radial position by a series of spring-bolts or lugs, carried respectively by the arms of a "spider" attached to the revolving ceiling, each lug engaging the upper end of one of the wings. The wings are of two parts (separated by a longitudinal connection), the inner part being hinged to a central standard, the outer part being both-way-hinged to the inner part. The construction is such that the application of abnormal pressure to the wings causes them to bend or buckle at the line of hinged connection, their consequent shortening automatically releasing the lugs engaging the upper ends of the wings, causing them to collapse. The claims in suit are Nos. 2, 7 and 8, which we print in the margin.[1] The prominent defenses are that the claims are invalid for want of invention in view of the prior art, and that defendant does not infringe.

Revolving doors were not new at the time of Van Kannel's 1900 patent. Indeed, Van Kannel himself had in 1888 been granted a patent (No. 387,571) upon a revolving door having a series of radiating wings rotating in a casing, the wings fitting snugly therein so as to exclude at all times wind, rain, snow or dust. The door revolved in but one direction, and was in fact always closed. The 1888 patent provided for so hinging one or more of the wings at or near the central post as to permit their being thrown back against the fixed wing, thus creating an opening for carrying through articles longer than the normal space between the radiating wings, and for the circulation of air; but it contained no feature by which the wings could be automatically collapsed or released from radial position in case of

[1] "2. The combination in a revolving door, of a structure mounted so as to rotate about a central axis, a series of wings mounted so as to swing independently of their joint rotating movement, about said axis, and *self-releasing locking devices, whereby said* wings are normally retained in fixed radial relation to said central axis.

"7. The combination in a revolving door, of a structure mounted so as to rotate about a central axis, radiating wings each mounted so as to swing independently of their joint rotation about the central axis, means for locking said wings to the rotating structure, and means whereby lateral pressure exerted upon the inner portion of either wing will automatically unlock the same.

"8. The combination in a revolving door, of a center post, with radiating wings normally locked to said center post but mounted so that they will be automatically unlocked therefrom, and swung forwardly to project side by side when pressure is exerted upon them in other than a normal direction."

great pressure from opposite directions, as might happen with an excited crowd. According to the 1888 patent, the entire door structure was to be mounted on a base secured to the doorway by "hooks, catches or other fastenings," so as to be capable of being moved out of the way to permit free exit when "the audience or congregation is leaving the building"; and as an added and specific protection against panic, the fastenings referred to were to be made so frail as to "be readily broken or torn from their places" in case of a sudden rush from the inside, thus causing the entire door-structure, including casing, to be thrown out.

Ife, in 1897 (No. 596,029), disclosed a modification of Van Kannel's idea to the extent of mounting the center post which carried the wings so that the entire revolving portion could be unshipped and removed from the doorway, in the event of a panic. These two inventions comprise the prior art relating to the panic features of revolving door structures. Neither involved the idea of automatically collapsible wings. Both were crude; neither of them was practicable or valuable. Van Kannel's invention of 1900 was both practicable and valuable, and made the inventor a pioneer as respects practicable panic features of revolving doors. He first disclosed the broad conception of making the wings automatically collapsible, without otherwise interfering with the door structure.

The references outside the revolving door art have little bearing upon the question of invention in that particular art. Emergency doors (not revolving) belong to a non-analogous art, and the other references pertain to arts unrelated to revolving doors. Van Kannel's patent of 1900 discloses a valuable invention, which has been very favorably received by the public. We have no doubt that it involved patentable invention. The same conclusion as to claims 2 and 8 (as well as other claims not here involved) was reached by the Circuit Court of Appeals for the Second Circuit. Van Kannel Revolving Door Co. v. Revolving Door & Fixture Co., 219 Fed. 741, 135 C. C. A. 439.

The defense that this patent merely amounts to a double patenting of Van Kannel's invention of 1888 is sufficiently disposed of by what has already been said. We see no merit in the suggestion of double use.

As to infringment: Defendant's structure differs from the structure of the Van Kannel patent, so far as here material, in that instead of having a series of lugs engaging the upper ends of the respective wings, it has two fixed wings, to each of which is hinged another wing, each connected to the fixed wing by a brace consisting of a rigid bar carrying a spring whose lip fits into a socket attached to the adjacent wing—the giving way of this fastening under abnormal pressure makes the wings collapse.

In our opinion, defendant's structure infringes claims 2 and 8 of the 1900 patent, for we think that, in view of the breadth of Van Kannel's invention, the joined inner ends of the two fixed wings with their bolts connecting with the floor are the equivalent of the central axis of claim 2 and the center post of claim 8; and that infringement is

not avoided by the fact that defendant's construction is such that all four of the wings cannot be projected forwardly so as to extend parallel with each other in the same direction. It is enough that two of the wings have that capacity and function. Claim 7, however, provides that the lateral pressure which automatically releases the locking mechanism is to be exerted "upon the inner portion" of the wing. Strictly speaking, defendant's wings, being integral (not in hinged section), have no well-defined "inner portion" as distinguished from the outer portion. Taking into account the characteristic feature of plaintiff's wings, as sectionally hinged, shown by the language of the specification and certain of the other claims, we are disposed to think claim 7 should be construed as relating to a door of the sectionally-hinged type, which has distinctively an "inner portion" and an "outer portion." For this reason, if for no other, we do not feel justified in holding claim 7 infringed.

[2] The 1906 patent in suit is in several respects an improvement upon the 1900 patent. So far, however, as concerns "panic" features, it differs from the former patent in dispensing with the spider and lugs engaging individually the tops of the wings, and uses merely a fixture attached to the adjacent sides of the wings, secured by fastenings so constructed as normally to hold the wings in radial position, but when subjected to abnormal pressure to release the wings, permitting them to collapse. Claims 1, 2 and 13 are involved. We print claims 1 and 13 in the margin.[2] Claim 2 differs from claim 1 principally in substituting the words "and ties attached to the adjacent sides of the wings" for the words "and fixtures connecting the adjacent sides of the wings," found in the first claim.

We are unable to agree with the contention that the broad claims 1 and 2 cover a new structure or new mode of operation in a patentable sense. On the other hand, we agree with the Court of Appeals for the Second Circuit (in the revolving door case already cited) that claims 1 and 2 involve merely a change of location of the holding devices, not rising to the dignity of invention. We think it clear that the substitution of a self-releasing locking device between the adjacent faces of the wings, for devices for the same purpose engaging the tops of the wings, involves merely the skill of the mechanic familiar with the revolving door art; and even if invention could be found (which we do not intimate) in placing the locking mechanism in the longitudinal center of the wings where the pressure comes, it is enough to say that the claims in suit cover no such feature.

Claim 13, however, limits the releasing device to a "*strap or cord* fastened upon one wing, of a fastening device upon the adjacent wing

---

[2] "1. In a revolving door, a central spindle, a series of wings pivoted thereto, and fixtures connecting the adjacent sides of the wings, and provided with automatically-detachable fastenings adjusted to permit the automatic collapsing of the wings under abnormal pressure."

"13. In a revolving door having collapsible wings, the combination, with a strap or cord fastened upon one wing, of a fastening device upon the adjacent wing arranged and operated to grasp the end of such strap detachably and to resist the normal pressure upon the wings, and adjusted to release the strap under abnormal pressure, whereby the wings are automatically collapsed under such pressure."

arranged and operated to grasp the end of such strap detachably," etc. It is the flexibility of this "strap or cord" which alone gives to the structure of the 1906 patent a feature so much dwelt upon in argument, viz.: That the release of one tie enables the remaining wings of the door to collapse without releasing the individual ties between them; in other words, the release of one tie practically effects a direct and immediate collapse of *all the wings*. This condition cannot result from the use of defendant's rigid bar. So whether or not we agree with the Circuit Court of Appeals for the Second Circuit, that claim 13 ,discloses only a combination of elements which would be evident to an ordinary mechanic (as we have no doubt would certainly be the case unless the claim is limited to a flexible tie), the result is the same here; for defendant does not have the flexible tie which distinguishes that claim, and so does not infringe it.

The decree of the district court is accordingly affirmed as to claims 2 and 8 of the 1900 patent, and reversed as to the 1906 patent, as well as to claim 7 of the 1900 patent; and the record is remanded to the district court with directions to enter decree in accordance with the views expressed in this opinion.

Appellant will recover one-half its costs of this court.