VAN KANNEL REVOLVING DOOR CO. v. STRAUS et al.

(Circuit Court of Appeals, Second Circuit. April 19, 1916.)

No. 242.

1. PATENTS ⟪⇒176—SCOPE OF CLAIMS.

A patent for a revolving storm door having wings with "self-releasing locking devices," which will be "automatically unlocked" when an unusual pressure is exerted against the wings, as in case of panic, *held* to cover a structure in which the wings are held together by chains made light enough to be easily ruptured by any unusual pressure.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 250⅔–252; Dec. Dig. ⟪⇒176.]

2. PATENTS ⟪⇒328—VALIDITY AND INFRINGEMENT—REVOLVING DOOR.

The Van Kannel patent, No. 656,062, for a revolving door, the purpose of which is to so construct the wings that they will yield to the rush of a panic-stricken crowd, *held* valid and infringed.

3. PATENTS ⟪⇒235—INFRINGEMENT—CHANGE OF FORM.

Infringement is not avoided by using the inventive idea of the patent in another structure in an imperfect form.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 371; Dec. Dig. ⟪⇒235.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Van Kannel Revolving Door Company against Nathan Straus, Jesse I. Straus, Percy S. Straus, and Herbert M. Straus, trading as R. H. Macy & Co. Decree for complainant, and defendants appeal. Affirmed.

This is an appeal from an interlocutory decree of the District Court entered October 28, 1915, finding claims 2 and 8 of United States patent No. 656,062 valid and infringed and awarding an injunction against the defendant for infringing the same. The patent is for certain improvements in revolving doors of the class which has a series of radiating wings rotating in a casing. The object of the present invention is to construct the wings in such a way that they will yield to the rush of a panic-stricken crowd; the wings of the door all being pushed together to the front, so as to provide a wide and unobstructed passage at each side of the center of the door structure. The claims in suit are as follows:

"2. The combination, in a revolving door, of a structure mounted so as to rotate about a central axis, a series of wings mounted so as to swing independently of their joint rotating movement about said axis, and self-releasing locking devices, whereby said wings are normally retained in fixed radial relations to said central axis."

"8. The combination, in a revolving door, of a center post, with radiating wings normally locked to said center post but mounted so that they will be automatically unlocked therefrom, and swung forwardly to project side by side when pressure is exerted upon them in other than a normal direction."

The patentee was the inventor of a former patent for revolving doors, No. 387,571, which had expired before the supposed infringement of the defendant herein. This patent operated upon a similar method, except for the fact that there was no provision for the wings' swinging except on their center of rotation; that is, there was no method by which they could be automatically released so as to provide an exit for a panic-stricken mob. The defendant's device consists of a revolving door of the same general character having four radial wings all rotating with a pintle in the center of the casing. Three of these are hinged so as to have a rotary motion relative to the pintle, while

the fourth is rigidly connected with the pintle and can rotate only with it. Between each adjacent couple of wings is a chain, made light enough to be easily ruptured in case a strong pressure is exerted upon opposing sides of two adjacent wings. When the chain between any two wings is ruptured by pressure from the inside they collapse outwardly. Since the hinged wings will not all lie flat with the rigid wing, and since the rigid wing must turn the pintle itself to assume a position of egress, it chances to result that there is only one position in which an exit is permitted on both sides of the pintle, and that in every other position the wings block one of the two exits. The theory of the operation of the door is, first, that the panic-stricken crowd shall break the chain; and, second, that unless the favorable position by chance happens to be the resultant of the pressures, the hinges of one, or at most two, of the hinged wings will also rupture, so as eventually to swing the rigid wing, and then all the other wings parallel with the egress of the crowd. A rupture of the hinges, as well as of the chain, is therefore presupposed for the proper operation of the door, except in the single condition above indicated. The sole important question is of infringement.

Baird, Cox, Kent & Campbell, of New York City, (Clarence G. Campbell, of New York City, of counsel), for appellants.

Titian W. Johnson, of Washington, D. C. (C. P. Goepel, of New York City, of counsel), for appellee.

Before WARD and ROGERS, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge (after stating the facts as above). [1] Although the complete purpose of the patent is secured only by the rupture of the defendants' machine in two respects, yet it may well be that to make those ruptures effective the principle of the patent must still be taken. That question turns upon whether the defendants' structure fairly embodies the invention contained in the claims themselves; that is, whether in claim 2 the phrase "a series of wings mounted so as to swing independently" covers a door in which three out of four wings are so mounted, and whether the phrase "self-releasing locking devices" covers a chain which will be ruptured when panic ensues. The question also depends upon whether in claim 8 the wings are "automatically unlocked" and whether all "swing forwardly to project side by side" when panic ensues. The phrases "automatically unlocked" and "self-releasing locking devices" ought to cover any devices which have been deliberately planned, whether by a mechanical adjustment, or by the proper proportioning of the parts, to effect a release of the wings at the proper moment, without the interposition of any human agent. Such is the fair meaning of the words; such the conceded purpose of the patentee. There is nothing in the specifications to limit the claims to a part only of this their natural meaning; had the arrangement of the defendants' wings been the same as that of the patent, the infringement would have been too plain for argument.

[2] The real question of doubt is because of this arrangement of the wings. Taken literally, the defendants' door infringes; it has a series of wings, though the series does not include all, which are mounted to swing independently of their joint rotating movement, as claim 2 demands. Claim 8 is more doubtful in its application, because the wings can hardly be said to swing side by side unless they

include in the process the rupture of the hinges, a question which we leave for the moment. We do not mean to determine the cause upon a nice consideration of the language of the claims; that is, because claim 2 happens to fit verbally, and claim 8 perhaps not to fit. The test should be whether the defendant has used the idea of the patent and modified it only in respects which the patentee left open for modification. This we think the defendant has done. The purpose of each was of course the same, to make a door which would secure safe egress to a frightened mob; that purpose was realized in each case by making the wings collapse and in the final event fold side by side away from the pintle in the direction of egress. To do this the wings must, at the moment of need, have a motion relative to the pintle and that motion must be capable of realization then, and then only.

[3] As we have already said, the release of the wings by rupture of the chain seems to us certainly the equivalent of a release by unlocking, and we think that by precisely the same reasoning the folding of the wings side by side, in part accomplished by the rupture of the hinges, is an equivalent of the more elaborate mechanism of the patent. The wings, in short, are consciously planned so that, first by swinging, and then by breaking, they will assume the necessary position in the door. That is what the patentee disclosed, and that is what the defendant uses; the only difference between them is that the defendant, either to economize, or to evade the patent, organizes its door so that it must be repaired after it has operated once. That is, it has used the idea in the invention, but has incorporated it in an imperfect form, a subterfuge which the courts will not pass. Crown Cork & Seal Co. v. Standard Stopper Co. (C. C.) 136 Fed. 199, 207; Hubbard v. King Ax Co. (C. C.) 89 Fed. 713; National Binding Machine Co. v. James D. McLaurin Co. (D. C.) 186 Fed. 992.

The elements of both claims being therefore appropriated by the defendant, the decision below was correct, and must be affirmed, with costs.