ROBERT et al. v. KREMENTZ.

(Circuit Court of Appeals, Third Circuit. July 6, 1917.)

No. 2243.

1. PATENTS ⬤⇒328—REISSUE—VALIDITY—MATCH BOX.

The Dodge reissue patent, No. 12,290 (original No. 749,539), for a match box designed to hold a book or comb of matches, having an open face with a hinged cover and a holding piece at one end for folding the package, with an opening therein through which the matches may be ignited on the friction material of the package, while applied for and granted for broadening the claims of the original patent, is valid, as within the invention described in the specification, the essence of which is in the means for engaging and holding the exposed match comb; also *held* infringed.

2. PATENTS ⬤⇒136—REISSUES—INADVERTENCE OR MISTAKE.

The failure of a patentee to apply for claims sufficiently broad to cover his invention, in the absence of any fraudulent intention, is an inadvertence or mistake, which will authorize a reissue.

3. PATENTS ⬤⇒142—REISSUE—ACQUIESCENCE IN REJECTION OF ORIGINAL CLAIMS.

The acquiescence by a patentee in the rejection of claims, which are for but a part of his invention, does not estop him from obtaining by a reissue claims for another and different part.

Appeal from the District Court of the United States for the District of New Jersey; John Rellstab, Judge.

Suit in equity by Samuel Robert, trading as the A. R. T. Manufacturing Company, and Harold A. Dodge, against George Krementz trading as Krementz & Co. Decree for defendant, and complainants appeal. Reversed.

For opinion below, see 232 Fed. 876.

James H. Griffin, of New York City, for appellants.
Seward Davis, of New York City, for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. The bill charged infringement of claims 5 and 10 of Reissued Letters Patent No. 12,290 to H. A. Dodge for a match box. The District Court, while of opinion that infringement must be found if the claims are valid, dismissed the bill on the ground that claims 5 and 10 of the reissue are substantially the same as rejected claims 1 and 2 of the application for the original patent (Serial No. 162,236—Letters Patent No. 749,539); and that in acquiescing in their rejection from the original, the patentee is precluded from asserting them in the reissue.

As viewed by the District Court, the case does not present the

broad question of "power to enlarge inadequate claims by a reissue, but the more limited one of overcoming by a reissue the error of acquiescing in the decision of the Commissioner of Patents that the patentee was entitled only to a narrower claim." We are inclined to the opinion that the case presents both questions. The reissue was sought admittedly for the purpose of obtaining enlarged claims and was granted with claims enlarged concededly for the purpose of awarding a patent commensurate with the invention, as stated by the Examiners-in-Chief when reversing on appeal the decision of the Examiner disallowing the claims. In order, therefore, to determine the validity of the broad claims of the Reissued Letters Patent sued upon, we must first determine whether they are for the invention of the original patent. Powder Co. v. Powder Works, 98 U. S. 126; Topliff v. Topliff, infra. If they are, we may then determine the questions upon which the case turned in the District Court, whether the rejected claims were similarly for the invention of the patent and were the same in scope as the reissue claims, and whether in acquiescing in their rejection the patentee lost his right to a patent for his invention. We must therefore inquire into the character of the invention and into the scope of the claims rejected, accepted and reissued, with reference to the invention.

[1] The invention of the patent is a match box, designed especially to hold "book matches" or the familiar comb of paper safety matches, and, because of its simplicity and cheapness, well adapted to advertising purposes. Within its limited field the invention is a pioneer, as it appears to be the first box designed and used to hold book matches, notwithstanding matches of that type had been extensively made and used for many years before the date of the patent. Its novelty cannot be questioned; its extensive use and popularity (being made by the million) argue its patentability. Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 858; Neill v. Kinney, 239 Fed. 309, —— C. C. A. ——.

The specification of the original discloses a structure designed to hold matches of the comb type, and no other. It is preferably tapered so as to conform to the wedge shape of a match comb, and is constructed to engage the clip or base of the comb in a way to hold the comb in the box and leave exposed its strands of matches and frictional surface. The engaging means or "holding piece," as diagrammatically shown in the original, is a continuation of the metal back of the box turned over the front a short distance. Upon this specification the patentee applied for the following claims:

"1. A match box comprising a back, having turned-up lips to afford side and end portions for the body of the box, and having, integral with the end portion, *a turned-over holding piece adapted to partly overlie a package of matches, and which holding-piece is provided with an opening through which the matches may be ignited on the friction material of the package,* said box being provided with a suitable lid.

"2. A match box provided with a hinged lid at one end and being formed deeper at the end where the lid is hinged than at its opposite end, so as to be adapted to hold a package of paper matches, and the said box having at its end opposite the hinge of the lid, *a holding-piece,* as d, *adapted to partly overlie a package of matches* contained by the box."

These claims were cancelled on references (principally Mortimer, No. 185,123—1876) showing match boxes designed not to carry match combs but to carry loose individual matches. These boxes had a holding-piece in the sense of a front high enough to hold the matches from toppling out, and not in the sense of fastening or engaging the matches in the box. To meet these references the Patent Office canceled the original claims of the application and substituted for them claims of the patent, as follows:

"1. A match box comprising a back having turned-up lips to afford side and end portions for the body of the box, and having, integral with the end portion, a turned-over holding piece adapted to partly overlie a package of matches, said holding-piece *having its central portion* open to provide an aperture through which the matches may be ignited on the friction material of the package, and said box being provided with a suitable hinged lid.

"2. A match box provided with a hinged lid at one end and being formed deeper at the end where the lid is hinged than at its opposite end, so as to be adapted to hold a package of paper matches, and the said box having, at its end opposite the hinge of the lid, a holding-piece, as *d*, adapted to partly overlie a package of matches contained by the box, said holding-piece *having its central portion cut away* to provide an opening through which the matches may be ignited on the friction material of the package."

In this cancellation and substitution the patentee acquiesced.

The only difference we discern between the two sets of claims is in the location of the opening in the holding-piece through which matches may be ignited on the friction material of the comb; the original claims make no reference to its location, while the substituted claims prescribe a central location.

The patentee soon realized that his claims did not cover his invention, so within less than two months from the grant of the patent he filed an application for reissue based upon the specification of the original patent, with amendments that did little more than emphasize the fact that the essence of the patent lay in the means for engaging and retaining the exposed match comb. Claims 1 and 2 of the application for reissue were the same as allowed claims 1 and 2 of the original, showing a holding-piece with a central opening. Claims 3 to 10 were new and broad. Claims 5 and 10 (the claims here in issue) did not deal with and therefore were not limited to a holding-piece with an opening, but concerned a match-retaining and engaging flange at one end of the box, permissibly extending from the sides, leaving the matches and frictional material exposed as before. They were:

"5. A match box having a solid back, a turned-up end member rigid therewith, two side members also rigid with said back, substantially the entire front of said box being open, a match retaining and engaging flange arranged near one end of the box to hold a package of matches exposed to view through the open front, and a cover pivoted to the box and arranged to cover the open front."

"10. A match box provided with a back, and end member and two side members rigid and integral with said back, substantially the entire front of said box being open, a cover hinged near one end of the box, and means near the end of the box opposite the cover-hinge for engaging and retaining a comb of matches, whereby the entire comb of matches is exposed when the cover is opened and individual matches may be detached without disturbing the comb."

After various amendments and much official correspondence, claims 3 to 10 were rejected by the Examiner on the ground that certain of them were anticipated by prior patents, and certain others (interpreted in the light of the specification) were the same in substance as the claims presented in the original application and rejected; and that there was no "inadvertence, accident or mistake" in securing the limited original claims of the patent upon which an application for a reissue of broader claims could be predicated. An appeal was taken, in which the Examiners-in-Chief reversed the entire decision of the Examiner upon reasoning that was exactly the opposite of his, and established the claims now contained in the Reissued Letters Patent. They stated that the Examiner, in finding there was no inadvertence in securing the original claims of the patent, was clearly in error, and held that none of the appealed claims is the same in scope as original claim 2 (and inferentially original claim 1). In so holding the Examiners-in-Chief said:

"They are all broader in some respects or narrower in others. * * * It is very apparent from a study of all the references cited that while many of the features of the appellant's device are shown to be old, no one of them nor all of them taken together is sufficient to anticipate the appellant's' device. It is as far as this record shows, the first device in which a package or comb of matches can be conveniently held and used, *and this is due to the features of the retaining and engaging means arranged near one end of the box and the front of the box being open substantially its entire length.* Each of the claims now appealed contains these features."

It should be kept in mind that an arrangement for holding a comb of matches in a box with its front open substantially its entire length to permit access to the comb, disengagement of matches and ignition on its friction piece is the essence of the invention. The claims of the reissue were allowed by the Examiners-in-Chief on the ground that they were within this conception of the invention as disclosed by the original specification.

The law of reissue when within the invention is well settled. This court has said (Nu Bone Corset Co. v. Spirella Co., 183 Fed. 984, 985, 106 C. C. A. 324, 325):

"If a patentee discloses in his specification an invention not sufficiently covered by the claims of his patent, he may, *if the limited character of the claim is the result of inadvertence,* accident, or *mistake,* surrender his patent and apply for a reissue, with a claim or claims sufficiently definite and exact *to cover the whole of his invention.*"

This statement of the law is in harmony with the cases generally upon the subject of broadening claims by patent reissues. The leading case probably is Topliff v. Topliff, 145 U. S. 156, 164, 12 Sup. Ct. 825, 831 (36 L. Ed. 658) in which the Supreme Court stated:

"It may be regarded as the settled rule of this court that the power to reissue may be exercised when the patent is inoperative by reason of the fact that the specification as originally drawn was defective or insufficient, *or the claims were narrower than the actual invention of the patentee,* provided the error has arisen from inadvertence or mistake, and the patentee is guilty of no fraud or deception; but that such reissues are subject to the following qualifications:

"First: That it shall be for the same invention as the original patent, as such invention appears from the specification and claims of such original.

"Second. That due diligence must be exercised in discovering the mistake in the original patent, and that, if it be sought for the purpose of enlarging the claim, the lapse of two years will ordinarily, though not always, be treated as evidence of an abandonment of the new matter to the public. * * * To hold that a patent can never be reissued for an enlarged claim would be not only to override the obvious intent of the statute, but would operate in many cases with great hardship upon the patentee. * * * The object of the patent law is to secure to inventors a monopoly of what they have actually invented or discovered, and it ought not to be defeated by a too strict and technical adherence to the letter of the statute, or by the application of artificial rules of interpretation."

Testing the validity of reissue claims 5 and 10 by these rules of law, we find ourselves in full accord with the ruling of the Examiners-in-Chief. These claims, though broader than the original and rejected claims, are nevertheless for the invention shown in the original specification. They would have been quite as much in place in the original as in the reissue. The patentee thus met the first requisite for a valid reissue. Topliff v. Topliff, supra. Being entitled to a patent for his invention and having failed to obtain it by original, has the patentee done anything which prevented him obtaining it by reissue?

[2] There is no evidence that in making claims of the limited character of the original, the patentee was actuated by fraud or deception. Topliff v. Topliff, supra. There is evidence that on discovering his mistake of asking for claims narrower than his invention, he was abundantly diligent in attempting to rectify it by an application for reissue. Topliff v. Topliff, supra. There is no suggestion that rights of others had intervened between the grant of the patent and the application for reissue. Miller v. Brass Co., 104 U. S. 350, 26 L. Ed. 783. Thus far the patentee conformed to the rules. Was the patentee's failure to apply for claims sufficiently broad to cover his invention an inadvertence or mistake within the meaning of the Reissue Statute? Upon this point it was said in Crown Cork & Seal Co. v. Aluminum Stopper Co., 108 Fed. 845, 853, 48 C. C. A. 72, 79:

"A review of the earlier decisions of the Supreme Court would seem to show that by 'defective or insufficient specifications' was meant any failure either to describe or claim the complete invention upon which the application for the patent was founded, and that 'inadvertence or mistake' was used in antithesis to fraudulent intent, and that the right to reissue depends upon any failure to make specifications and claims legally adequate to their purpose, if due to any cause except an intention to deceive."

In Toledo Computing Scale Co. v. Moneyweight Scale Co. (C. C.) 178 Fed. 557, 559, the court said:

"Mistake or inadvertence making a patent inoperative or invalid may be that of the patentee or his solicitor, either in preparing the specification or claims. If the solicitor fails to understand and properly describe or claim the real invention, by making claims so broad as to be anticipated, or so narrow as to be inoperative, this is such mistake as to authorize a reissue, if authorized on other grounds. Topliff v. Topliff."

It has been generally held that inability of solicitors of a patentee to put claims into a form that covers the real invention constitutes a case of inadvertence authorizing a reissue, and in such case the

abandonment of such claims on their rejection by the Patent Office is not an abandonment of the invention and does not preclude a reissue and the substitution of claims which properly cover it. Toledo Computing Scale Co. v. Moneyweight Scale Co. (C. C.) 178 Fed. 557.

This kind of mistake or inadvertence the patentee claims was made in his case. In this we agree with him and with the Examiners-in-Chief. We are therefore of opinion that the patentee was entitled to a reissue, and that claims 5 and 10 of the reissue are valid—unless the patentee is estopped from asserting them because of his acquiescence in the rejection of claims for the same invention and of similar scope when applying for his original patent.

[3] Having determined that claims 5 and 10 of the reissue are for the invention of the patent, we must inquire whether rejected claims 1 and 2 were also for the same invention, in order to decide the question of estoppel.

The rule is well established that an inventor who acquiesces in the rejection by the Patent Office of his claim in one form and accepts a patent *for the same thing* but with the claim changed so as to correspond with the views of that office, is estopped to claim the benefit of the rejected claim. Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425, 429, 14 Sup. Ct. 627, 38 L. Ed. 500; Leggett v. Avery, 101 U. S. 256, 25 L. Ed. 865; Crawford v. Heysinger, 123 U. S. 589, 606, 8 Sup. Ct. 399, 31 L. Ed. 269; Union Metallic Cartridge Co. v. United States Cartridge Co., 112 U. S. 624, 5 Sup. Ct. 475, 28 L. Ed. 828; Phœnix Caster Co. v. Spiegel, 133 U. S. 360, 368, 10 Sup. Ct. 409, 33 L. Ed. 663. But he is not estopped by his acquiescence in the rejection of the claim asked for to make a claim by reissue for something he had not asked for and which had not been refused by the Patent Office.

Were rejected claims 1 and 2 for the same thing as reissue claims 5 and 10?

Claims 1 and 2 as applied for in the original, dealt with a holding-piece of the match box and were rejected upon references because they did not designate the location of an opening in the holding-piece. Substituted claims 1 and 2 differed from rejected claims 1 and 2 by prescribing the location of the opening. None of these claims embraced or emphasized the capital feature of the invention, which is a means to engage and firmly hold the match comb in a fashion which permits disengagement of single matches and ignition upon its friction surface. The specification of the original, however, was sufficiently broad to include this means; yet the claims of the original, either rejected or substituted, were not sufficiently broad to cover it. Therefore what the patentee acquiesced in was the rejection of two claims dealing with a particular construction of a holding-piece and opening. What he got were two claims dealing with the same holding-piece construction, but prescribing the location of the opening. He thus asked for and obtained claims for but a part of his invention. It is now maintained that in accepting claims for only a part, he abandoned the balance. This we question. What the patentee did (keeping always in mind the essence of his invention) was to disclose his real invention and fail to claim it. Having never claimed his

real invention, he never abandoned it. All he abandoned by acquiescing in the rejection of claims 1 and 2 of the original was the indefinite location of the ignition opening in a structure having a holding-piece. In his application for reissue he did not ask for new claims covering this structure, but prayed for new claims covering the engaging means of his invention not covered either by rejected or substituted claims 1 and 2 of the original. These were allowed. We are of opinion that rejected claims 1 and 2 were for but a part of the patentee's invention, and that reissue claims 5 and 10 are for another and different part, and that in consequence the patentee is not estopped from asserting them as valid claims in a reissue.

Having sustained the validity of claims 5 and 10 of the Reissued Letters Patent, we find them infringed. The motion to dismiss is without merit.

The decree below is reversed.