## VAN KANNEL REVOLVING DOOR CO. v. WINTON HOTEL CO.

(Circuit Court of Appeals, Sixth Circuit. October 4, 1921.)

No. 3532.

1. **Patents ⊙⊃328—Reissue 14,255, for revolving door, claims 3, 23, and 24, held valid and infringed.**

    The Van Kannel reissue patent, No. 14,255 (original No. 836,843), *held* validly issued as to claims 3, 23, and 24, on the ground of inadvertence. Claims 1, 2, 13, and 22 *held* void for lack of invention over the prior art. Claims 3, 23, and 24 *held* valid and infringed.

2. **Patents ⊙⊃136—"Inadvertence" which authorizes reissue.**

    If a patentee, though his solicitor, without intending to do so, drafted or accepted claims not commensurate with the invention such act is an inadvertence within the meaning of Rev. St. § 4916 (Comp. St. § 9461), which entitles him to a reissue.

    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Inadvertence.]

3. **Patents ⊙⊃141—Whether reissue is for same invention not determined by claims of original patent.**

    What constitutes the "same invention" as applied to a reissue granted under Rev. St. § 4916 (Comp. St. § 9461), is not to be determined by the claims of the original patent, but from the description, and such other evidence as the Commissioner may deem relevant.

4. **Patents ⊙⊃141—Claims may be either narrowed or broadened by reissue.**

    Claims may be either narrowed or broadened by a reissue to express the real invention.

5. **Patents ⊙⊃144—Inadvertence authorizing reissue question primarily for Commissioner.**

    Whether there was inadvertence authorizing a reissue is a question primarily for the Patent Office, and its decision will not be reviewed unless inconsistent with other facts appearing in the record.

6. **Patents ⊙⊃147—Invalidity of claims in reissue does not invalidate other claims.**

    The fact that some of the claims of a reissue are invalid does not invalidate other claims.

7. **Patents ⊙⊃237—Structure may infringe patents for broad device and for improvements thereon.**

    A structure may be the mechanical equivalent of a broad device and also of an improvement thereon and may be an infringement of patents for each.

Appeal from the District Court of the United States for the Northern District of Ohio; D. C. Westenhaver, Judge.

Suit in equity by the Van Kannel Revolving Door Company against the Winton Hotel Company. Decree for defendant, and complainant appeals. Affirmed in part, and reversed in part.

For opinion below, see 263 Fed. 988.

Titian W. Johnson, of Washington, D. C. (Titian W. Johnson, of Washington, D. C., and Hull, Smith, Brock & West, of Cleveland, Ohio, on the brief), for appellant.

T. Kennedy Helm, of Louisville, Ky. (Trabue, Doolan, Helm & Helm, of Louisville, Ky., and D. A. Christopher, of Cleveland, Ohio, on the brief), for appellee.

⊙⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. Suit upon reissue patent No. 14,255, February 6, 1917, to Van Kannel, plaintiff's assignor, on collapsible revolving doors of the "panic-proof type." The claims in suit are Nos. 1, 2, 3, 13, 22, 23, and 24. The original patent, of which the patent here in suit is a reissue, is No. 836,843, February 27, 1906, to Van Kannel. The defenses are (1) lack of novelty and invention, (2) invalidity of reissue, and (3) noninfringement. The district judge held all the claims invalid for lack of novelty and invention, and dismissed the bill, without passing upon the remaining two defenses.

Referring briefly to the prior art: Van Kannel had in 1888 been granted a patent (No. 387,571) upon a revolving door having a series of wings rotating in a casing, in which the wings fitted so snugly as to exclude at all times wind, rain, snow, and dust. While that patent provided for so hinging one or more of the wings at or near the central post as to permit their being thrown back against a fixed wing, it contained no feature by which the wings could be automatically collapsed or released from radial position in case of great pressure on opposite wings. The entire door structure was to be mounted on a base secured to the doorway so lightly as to be capable of being moved out of the way to permit free exit, and the fastenings so frail as to be readily broken or torn from their place in case of a sudden rush from the inside, thus causing the entire door structure to be thrown out. As a "panic-proof" device, this invention was quite impracticable, judged by present standards.

In 1900 Van Kannel was granted another patent (No. 656,062) for an automatically collapsible panic-proof door, the wings of which were held normally in radial position by a series of spring bolts or lugs carried respectively by the arms of a "spider" attached to a revolving ceiling, each lug engaging the end of one of the wings, which were respectively of two parts (separated by a longitudinal connection), the inner part being hinged to a central standard, the outer part being bothway hinged to the inner part. The construction was such that the application of abnormal pressure to the wings caused them to bend or buckle at the line of hinge connection, their consequent shortening automatically releasing the lugs engaging the upper ends of the wings, causing them to collapse. The invention of the 1900 patent was both practical and valuable. It was repeatedly sustained and held infringed.[1] In view of the various adjudications of the patent of 1900, we pass without comment several other patents relating to the revolving door art, including one or more issued to Van Kannel. They are sufficiently referred to in the adjudications just cited. The invention of

[1] Van Kannel Revolving Door Co. v. Revolving Door & Fixtures Co. (1914), C. C. A. 2, 219 Fed. 741 (claims 1, 2, 8 and 13), 135 C. C. A. 439; Louisville Trust Co. v. Van Kannel Revolving Door Co. (1916), C. C. A. 6, 231 Fed. 166 (claims 2 and 8), 145 C. C. A. 354; Van Kannel Revolving Door Co. v. Straus (1916), C. C. A. 2, 235 Fed. 135 (claims 2 and 8), 148 C. C. A. 629; Van Kannel Revolving Door Co. v. Lyon & Healy (1917), C. C. A. 7, 247 Fed. 329 (claims 1, 2 and 8), 159 C. C. A. 423; Van Kannel Revolving Door Co. v. Uhrich (1916, D. C.), 247 Fed. 344 (claims 1, 2 and 8).

Van Kannel's patent of 1906, and of the reissue here in suit, dispenses with the spider and lugs engaging the tops of the wings, whose adjacent faces are connected with each other only by flexible ties secured in fixtures near the longitudinal center of the faces of the one-piece wings, by which ties the wings are normally held in radial position; abnormal pressure, however, upon the face of any wing causing the fastening thereon to be released automatically. This release of one tie practically effects a direct and immediate collapse of all the wings without disturbing the fastenings upon more than one wing—a result not effected by the invention of the 1900 patent. A more prominently outstanding feature of the invention of the 1906 patent, however, is the employment of a hinge connecting the wings with the central standard, of such character as to enable the compact folding of all the wings side by side in one operation, as well as their restoration to normal radial position and operable condition by merely reconnecting the one tie so released.

[1] We first consider claims 1, 2, 13, and 22, for the reason that neither of them involves the hinge of the reissue patent, and the conclusion reached makes it unnecessary to consider either of the defenses which were passed by below. Original claim 1 calls for "a central spindle, a series of wings pivoted thereto, and fixtures connecting the adjacent sides of the wings, and provided with automatically detachable fastenings adjusted to permit the automatic collapsing of the wings under abnormal pressure." Claim 1 of the reissue differs from original claim 1 in substituting "flexible ties" for "fixtures" and adding the clause, "whereby upon the application of excessive pressure to some of the wings, the tie connection there between is broken, and the other wings folded, without releasing the ties therebetween." Original claim 2 differs from original claim 1 principally in including the casing as an added element, in the use of "ties" in place of "fixtures," and in the addition, at the end of the clause, "to permit the collapsing of the wings." Reissued claim 2 differs from the original of that number only in substituting "flexible ties" for "ties," and substituting for the last clause of original claim 2 the words, "the tie connection between the wings subjected to abnormal pressure breaking and the wings folding without disturbing the tie connections between the other wings." Original claim 13 called for a "strap or cord fastened upon one wing, of a fastening device upon the adjacent wing arranged and operated to grasp the end of such strap detachably and to resist the normal pressure upon the wings, and adjusted to release the strap under abnormal pressure, whereby the wings are automatically collapsed under such pressure." Claim 13 of the reissue differs from the original in substituting "flexible tie" for "strap or cord" and "tie" for "strap," and in substituting for the last clause of the original claim, "the flexibility of the tie being such that upon the breaking of the connection between the adjacent sides of two wings, the wings will be permitted to be automatically folded without disturbing the other sides." Claim 22 of the reissue is entirely new. It substantially combines the elements of claims 1, 2, and 13, and calls for a connection of the ends of the "flexible ties" with "the wings at points intermediate the top and bottom

thereof, approximate to the points of application of the pressure upon the wings." Several of the claims of the 1906 patent have been adjudicated. The Circuit Court of Appeals for the Second Circuit, in the decision already cited, which held several claims of the 1900 patent valid and infringed, also held claims 1, 2, 13, and 14 of the 1906 patent void for lack of invention, as "evidently an attempt to extend the monopoly of the earlier patent by changing the names of the various elements," and saying of claims 13 and 14 that they "disclose nothing but a combination of old elements which would be evident to an ordinary mechanic."[2] This court, in its decree which sustained the Van Kannel patent of 1900,[3] held claims 1 and 2 of the 1906 patent void for lack of invention over the patent of 1900, as involving "merely a change of location of the holding devices, not rising to the dignity of invention." Claim 13 was held not infringed, even if valid.

In our opinion neither claim 1, 2, 13, nor 22 of the reissue involves invention over the prior art. There was nothing new in the use of a flexible tie. Van Kannel himself had shown such a tie in his 1888 patent. As we said in Louisville Co. v. Van Kannel Co., supra (231 Fed. at page 170, 145 C. C. A. 354), it was the flexibility of the "strap or cord" of claim 13 which effected the immediate and direct collapse of the wings when one tie connection was released. In our opinion not only do claims 1, 2, and 13 of the original patent of 1906 lack invention in view of the prior art, but the situation is not altered by the changes made in the claims as reissued. It results, we think, from what we have said, that claim 22 is equally without invention. We are thus brought to claims numbered 3, 23, and 24 of the reissue.

Claims 23 and 24 were added by the reissue. With the qualification stated in the margin,[4] neither of the three claims we are now considering has been passed upon by any court, so far as we are advised. The novel hinge of the patent in suit is sufficiently described in the specification, from which we quote in the margin.[5]

Claim 3 (original) reads:

"A revolving door having a suitable casing, a spindle centered therein with hanger-disks near its opposite ends and a series of wings *having fulcrum-pins*

[2] Van Kannel Revolving Door Co. v. Revolving Door & Fixtures Co., 219 Fed. 741, 135 C. C. A. 439.

[3] Louisville Trust Co. v. Van Kannel Revolving Door Co., 231 Fed. 166, 145 C. C. A. 354.

[4] Claim 3 of the 1906 patent (before the reissue) was held void by District Judge Pollock, but the appeal from that holding (Van Kannel Co. v. Ulrich [D. C.] 247 Fed. 344) was dismissed on appellant's motion without prejudice, by reason of the adverse holdings before referred to as to the validity of claims 1, 2, 13 and 14 of the original 1906 patent.

[5] "The wings in the present invention are pivoted upon the central spindle in a novel manner by providing a grooved disk near each end of the spindle and furnishing each wing with two fulcrum-pins adapted each to engage the groove in one of the disks. A pinion is provided upon the spindle adjacent to each disk, and a toothed segment meshing with such pinion is attached to each of the wings and made concentric with the fulcrum-pin, and the fulcrum-pins are thus enabled to change their position upon the fulcrum-plate when the wings are moved from their normal position by their constant engagement with the groove in the disk during the rolling of the segment upon the teeth of the pinion."

*movable upon such fulcrum-disks, for holding all of the wings together upon one side of the spindle."*

That claim, as reissued, differs from the original in substituting for "disks," "plates * * * having guide grooves therein," and, second, in substituting for the matter we have italicized the words:

"Adapted to be moved to side by side position to make emergency exits, and having fulcrum-pins floating in said grooves whereby a series of wings may be collapsed to folded position from any direction."

Claim 23 of the reissue is a new claim, and an exact copy of claim 3, with the following addition:

"Said wings being provided with automatically detachable fastenings adjusted to permit the automatic collapsing of the wings upon the application of excessive pressure applied to the wings."

Claim 24, which is likewise new, is substantially like claim 3 with this addition:

"And flexible ties between the adjacent sides of the wings, and serving to hold the wings in normal radial relation to each other, and permitting all of the wings to be folded upon the release of one of the ties."

[2-6] As applied to claims 3, 23, and 24, we think the reissue was validly made as against the criticisms that the original patent had not been held void for inadvertence, accident, or mistake, and that the application for reissue was not made within a reasonable time. The specification of the 1906 patent was broad enough to support the claims contained in the reissue. There was no change in the drawings, and the changes made in the specification were only in the interest of further elaboration and explanation. They introduced no substantial new matter. The substantial basis of the application for reissue was that the claims were not commensurate with the invention. If Van Kannel, through his solicitor, without intending to do so, drafted or accepted claims not commensurate with the invention, such act is an "inadvertence" within the meaning of Rev. Stat. § 4916 (Comp. St. § 9461), which entitled him to a reissue. What constitutes the "same invention" is not to be determined by the claims of the original patent, but from the description and such other evidence as the commissioner may deem relevant. Whether the act was inadvertent is a question primarily for the Patent Office, whose decision will not be reviewed unless inconsistent with other facts appearing in the record. American Co. v. Porter (C. C. A. 6) 232 Fed. 456, 146 C. C. A. 450. It is not important whether the patentee considered the claims, as drawn, too broad, rather than too narrow. Claims may be either narrowed or broadened to express the real invention. American Co. v. Porter, supra; Specialty Co. v. Ashcroft (C. C. A. 2) 213 Fed. 35, 40, 129 C. C. A. 629; Robert v. Krementz (C. C. A. 3) 243 Fed. 877, 881, 156 C. C. A. 389. In our opinion the decision of the Patent Office that the reissue was proper is not inconsistent with facts otherwise appearing in the record. The proposition that the original claims were not sufficient to protect the real invention is not overthrown by the fact that the holdings of invalidity of the claims of the 1906 patent, so far as made, were based upon lack of invention. Neither of the claims held

invalid involved the hinge feature to which we have referred. The fact that some of the claims of a reissue are invalid does not invalidate other claims. Vandenburgh v. Concrete Steel Co. (C. C. A. 2) 258 Fed. 143, 169 C. C. A. 138, certiorari denied 250 U. S. 664, 40 Sup. Ct. 11, 63 L. Ed. 1196. The statute does not fix any absolute period within which reissue must be applied for; the only inflexible requirement is that of reasonable diligence. Mahn v. Harwood, 112 U. S. 354, 5 Sup. Ct. 174, 6 Sup. Ct. 451, 28 L. Ed. 665; Milloy Co. v. Thompson-Houston Co. (C. C. A. 6) 148 Fed. 843, 78 C. C. A. 533. No rights of inventors have intervened. In the Circuit Court of Appeals for the Second Circuit (219 Fed. 741, 135 C. C. A. 439) the patent (claims 1, 2, 13, and 14) was held void December 15, 1914. This was the first final adverse holding. We think plaintiff was not bound before that decision to apply for reissue. There was then pending in this court the case already referred to (231 Fed. 166, 145 C. C. A. 354), involving the patent of 1906. We think plaintiff was entitled to await the decision of this court before surrendering his 1906 patent. That decision was made March 7, 1916. In May following plaintiff presented to the Patent Office an application for reissue, which was not allowed to be filed because of a requirement that the application be made by the original patentee. The formal filing of the application was accordingly delayed until December 27th following. Showing was made of inability to induce earlier action by Van Kannel. In our opinion the authority to reissue is not shown to have been exercised without jurisdiction or improvidently.

The patent of 1906 marked an important improvement in the art in question, and we think the validity of claims 3, 23, and 24 of the reissue depends upon whether or not there was invention over the 1900 art in the improvement disclosed in the Van Kannel patent of 1906. There is nothing in the adjudications respecting the 1906 patent which to our minds discredits the existence of novelty and invention in these three claims. We find both of these features present in each of the three claims in question. The device of this patent produced a new and useful result, and by a new combination of elements. It was the first to effect not merely the immediate collapse of all the wings on the release of one fastening, but the immediate, compact side-by-side holding, by one action, of a series of one-piece wings, as well as the restoration of the wings to normal position by one movement. The hinge itself is novel and contains invention.

[7] We see no merit in the contention that Van Kannel was precluded from obtaining the patent of 1906 by the fact that he had already obtained the 1900 patent. The fact that he had a valid and broad patent for the 1900 invention did not preclude him from obtaining a patent for the specific improvement thereon disclosed by the 1906 patent. O'Reilly v. Morse, 15 How. 62, 121, 14 L. Ed. 601; Cantrell v. Wallick, 117 U. S. 689, 694, 6 Sup. Ct. 970, 29 L. Ed. 1017, and cases there cited. Nor do we see any merit in the proposition that plaintiff is estopped from asserting against defendant the validity of the 1906 patent, or the reissue thereof, from the fact that he obtained adjudications sustaining the patent of 1900 and adjudging its infringe-

ment, and even by structures containing the same hinge and in all other respects the same as that asserted here. True, infringement in each case assumes mechanical equivalency, but mechanical equivalency is a relative term, and does not import actual identity. A structure may thus be at one and the same time the mechanical equivalent of a broad device and of an improvement thereon, the less being included in the greater. Curry v. Union Co. (C. C. A. 6) 230 Fed. 422, 429, 144 C. C. A. 564; Electric Co. v. Electric Controller Co. (C. C. A. 6) 243 Fed. 188, 193, 1007, 156 C. C. A. 54, 664; Dunn Co. v. Toronto Co. (C. C. A. 6) 259 Fed. 258, 264, 170 C. C. A. 326.

In fact, the distinctive feature of the 1906 improvement patent, viz., its hinge, was not involved in any of the adjudications referred to.

We also think infringement shown. We think defendant's so-called trammel hinge the mechanical equivalent of the hinge of the reissue in suit; in other words, defendant has, in our opinion, the equivalent of hanger-plates near the opposite ends of the spindle, with guide-grooves therein and fulcrum-pins floating in the grooves, enabling the collapsing of the series of wings to a folded position from any direction. As counsel say:

"The wings rock both upon their pivots and from their original pivotal points, and swing to one side of their disks to lie side by side in the same direction."

We summarize in the margin a specific description of defendant's hinge, and a comparison with that of plaintiff, as given by plaintiff's expert witness.[6]

We are impressed that infringement is not defeated by the absence from defendant's hinge of the toothed pinions upon the spindle and the toothed segments upon the wings engaging the pinions. Indeed, the three claims we are considering omit the call for toothed pinions and toothed segments, although all call for "guide grooves" in the hinge plates and for "fulcrum-pins" floating therein. The principal purpose of the gear and pinion of plaintiff's hinge is to hold the wings so

[6] Fulcrum-plates are carried by the spindle near its top and bottom, each plate having on its under side a groove, the outline of which is square when viewed from below. On top of each plate are four radial grooves, each arranged to intersect the center of one of the sides of the square grooves on the bottom of the plate, each of the door wings being cut away to receive a fulcrum-box which carries studs fitting and moving in respectively both the square outlined grooves on the under side and the radial grooves on the upper side. When the wing is swung from its radial position the studs traverse the square groove and move outwardly in the radial groove. The substantial difference is that Van Kannel uses for each wing a single fulcrum-pin traveling in a slot on a hanger plate and a gear traveling on a pinion on the spindle, while defendant uses two fulcrum-pins. one of which travels in a groove of a hanger plate, which groove follows the contour of the plate's periphery, while the other pin follows the radial slots, the object in both cases being to provide a definite location of the wings in relation to the spindle, while permitting one of the pivotal points of the wing to have a movement different from a single hinge, in order to give a given wing a greater amplitude of motion than the other one would otherwise have, to get it around to a point where it will lie parallel to the others. In each case there is one fulcrum-point or pin which shifts laterally in respect to the spindle, and it is this one which gives the desired amplitude of motion.

that they will revolve around the central post and lie side by side, but, as plaintiff's expert says, the hinge would not be inoperative without the gears; "the doors will swing on the pivots and the doors will swing on the grooves, whether the gears are there or not. All these folding functions can be performed in the absence of the gears," although it would not be commercially successful without the gears or without "provision of other or equivalent means to take the place of" the gears and pinions. The difference in the forms of detachable fastenings employed is not important. In fact, neither of the claims in suit includes the form of this detachable device. Nor is it important that in defendant's structure the giving way of the fastening is occasioned by pressure applied to a handrail instead of directly against the door. See Van Kannel Co. v. Lyon & Healy, supra, 247 Fed. at page 331, 159 C. C. A. 423.

The decree of the District Court is affirmed so far as concerns claims 1, 2, 13, and 22, and reversed as to claims 3, 23, and 24, and the record will be remanded, with directions to enter a new decree in accordance with this opinion. The costs of this court will be divided.