STAHLBRODT CO. v. FORD MOTOR CO.

(District Court, W. D. New York. March 14, 1916.)

No. A–96.

1. PATENTS ⬅328—VALIDITY AND INFRINGEMENT—WIND SHIELD FOR MOTOR VEHICLES.

The Samuel reissue patent, No. 13,574 (original No. 879,195), for a wind shield for motor vehicles, is within the invention of the original patent, the claims being narrower, was not anticipated, and discloses invention; also *held* infringed.

2. PATENTS ⬅141—REISSUE—DEPARTURE FROM ORIGINAL PATENT.

A reissue patent is not invalid because the claims include features not specifically claimed in the original patent, where they were fully described in the specification and their relation to the other parts shown.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 206–213; Dec. Dig. ⬅141.]

In Equity. Suit by the Stahlbrodt Company against the Ford Motor Company for infringement of reissue letters patent No. 13,574 (original No. 879,195), for a weather screen for motor and similar vehicles, granted to Henri Saul Samuel June 10, 1913. On final hearing. Decree for complainant.

Church & Rich, of Rochester, N. Y. (Melville Church, of Washington, D. C., of counsel), for complainant.

Whittemore, Hulbert & Whittemore, of Detroit, Mich. (James Whittemore, of Detroit, Mich., of counsel), for defendant.

HAZEL, District Judge. [1] This action is for alleged infringement of reissue patent No. 13,574, dated June 10, 1913, .and issued to complainant company on application filed in September, 1912, for improvements in wind shields or weather screens for motor cars and

similar vehicles. The original patent, No. 879,195, was issued February 18, 1908, on application filed December 21, 1905, and described a shield or screen made of two parts—a lower part, secured to the upper edge of the dashboard of an automobile and inclining inwardly and upwardly therefrom, bolted to brackets on the dashboard, and supported on the inner side by standards and studs, the latter extending from the upper edge downwardly to the floor of the automobile; and an upper part, a glazed sash, hinged to the top of the lower section. Curved slots, engaging thumb screws on the upper section, were provided at the sides for locking the upper part at any point of adjustment from its vertical position outwardly and downwardly. The lower section extended inwardly and upwardly from the dash near the level of the steering wheel, and by such inclination protected the hands of the driver from dust and wind, without, however, interfering with the steering movements.

In April, 1912, complainant was apprised of the fact that the principal claims of the original patent were inoperative and invalid because the British patent of 1901, in evidence, to Lanchester, No. 25,121, disclosed broadly a lower inclined part with an adjustable glazed upper part resting upon it, and thereupon said original patent was surrendered and the reissue patent allowed.

The claims relied upon are the second, third, and fifth, reading as follows:

"2. A wind guard for vehicles consisting of a lower stationary and rigidly supported flat portion extending transversely of the vehicle and inclined rearwardly in proximity to the steering wheel or handle, an upper transparent flat portion adjustably and permanently hinged upon the lower portion and adapted to be folded forwardly against the latter into parallelism therewith, and means for maintaining the portions in one of their positions of relative adjustment, said means being arranged laterally so as to clear the parts when folded.

"3. In a wind shield for a motor or similar vehicle, the combination with the dash or front part of the vehicle, of a lower member fixed to the dash and extending inwardly and upwardly to a level near that of the steering wheel or handle, the rods D for maintaining the member in such fixed and rigid position arranged rearwardly of the member and connected thereto and to a rigid part of the vehicle, a second flat and rigid member having a permanent hinged connection with the lower member and extending vertically upward from the lower member in front of the driver's face and means arranged at the ends of the members for adjusting the upper member relatively to the lower member."

"5. In a wind shield for motor or similar vehicles, the combination with the dash, of a lower flat member rigidly fixed at its front or lower edge to the upper edge of the dash and extending at an inclination rearwardly and upwardly to a level near that of the steering wheel or handle, the rods D for maintaining the member in such fixed and rigid position arranged rearwardly of the member and connected thereto at its respective ends and to a rigid part of the vehicle, a second flat and rigid member having a permanent hinged connection with the lower member to turn relatively thereto on an axis substantially coincident with its lower edge and with the upper edge of the lower member, said upper member normally extending upwardly from the lower member in front of the driver's face, but being adapted to fold forwardly against the lower member, and means arranged at each end of the members for adjusting the upper member relatively to the lower member, each comprising interlocking devices connected to the members respectively at points adjacent to their axis of relative movement."

The elements of claim 2 are: (1) A lower flat part inclining inwardly; (2) an upper flat part (transparent) adapted to fold forwardly; and (3) means for adjusting the same at different angles. Claim 3 includes rods D arranged rearwardly for holding the lower part stationary, and means for hinging the two parts together, the lower part extending upwardly in front of the driver's face, and also means at the sides for maintaining adjustment. Claim 5 specifies in detail the points of connection and the arrangement of the elements and is more limited than the others.

The defenses are that both the reissue and the original patents are void for want of invention and are anticipated; that the reissue patent is invalid because it is for a different invention than the original patent, the claims having been broadened; and noninfringement.

I think the reissue patent is narrower than the original, which broadly included any wind guard attachment for automobiles in which an upper section was offset rearwardly from an inclined lower position, thus providing a barrier for the occupants of the car against the wind caused by the motion of the car. It was not, however, objectionable for want of definiteness, as contended, because of failure to show the steering wheel in the drawings, as the skilled in the art concededly were well aware of the ordinary position of the steering wheel in automobiles.

To anticipate the reissue patent the defendant relies on Kerr patent, No. 812,930, of February 20, 1906, and the Lanchester British patent, No. 25,121, of 1901; but I am of the opinion that such patents are not anticipatory. In both the Kerr structure and the complainant's structure means for supporting the shield were made independent of the upper section; but, while the upper section of the Kerr shield was adjustable for folding when not in use, the lower part was not inclined inwardly as in complainant's shield, so that, when protection from the wind was desired, the Kerr shield was positioned in a strictly vertical plane directly over the dash, thus offering positive resistance to the wind, causing currents to pass around its edges rearwardly to the occupants of the car.

Another objectionable feature of the Kerr shield was the method of bracing it with long rods extending forward to the hood of the engine, interfering somewhat with ready access thereto, which were not only unsightly, but subject to great vibration when the car was in motion. Complainant's arrangement of the supporting rods inside the car, extending downwardly to the floor towards the driver, was a modest patentable improvement, and its inclined arrangement of the two sections of its shield achieved a new result.

The Lanchester patent describes a crude device for protecting the driver from inclement weather. It has a lower section, which seems to be an extension of the dash of the vehicle, but which, when in use, inclines diagonally towards and close to the driver, resting on a narrow shelf, to which it was hinged at its lower edge; its arrangement being such as to require swinging the lower section in passing to and from the vehicle. The construction and appearance of the upper member indicates that it was used only on occasions when the weather was

extremely indifferent; it was not a fixed or permanent structure at all, and when in use was hooked to the lower member, engaging clips or slots so that (quoting from the specification) it can "'be made to take up a vertical position or to slope in either direction by means of a telescopic stay." The upper portion "may be lifted out of engagement with the lower dashboard." The Lanchester shield was a failure, and never appealed to users of automobiles. The inferences to be drawn from it are strongly in favor of complainant's contention that it is not entitled to material consideration, except in justification of the limited claims in issue.

[2] Defendant also challenges the validity of the reissue on the ground that certain features were added to the old combination, namely, the adjusting means at the ends of the sections and the bracing rods $D$ on the rear side of the shield, instead of in front. While such adjusting means and bracing rods were not specifically included in the surrendered claims, the original specification nevertheless referred to them, together with their relationship to the operativeness of the wind shield, in such a clear way that I am impressed with the view that the inclusion of such means in the reissue claims 2, 3, and 5 was not a departure from the invention of the original patent. Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658. There are numerous citations in defendant's brief bearing upon the contention that the reissue was not for the same invention as the original; but such adjudications are inapposite, as they disclose an absence of identity between the features described in the original patents and those of the reissue patents. See Specialty Match. Co. v. Ashcroft Mfg. Co. (D. C.) 205 Fed. 761; Id., 213 Fed. 35, 129 C. C. A. 629; Edison v. American Mutoscope Co., 114 Fed. 926, 52 C. C. A. 546.

The invention in suit, it is true, was simple, especially in view of the Kerr patent; but I think it possessed patentable novelty and should be protected. Its sightliness, to say nothing of the convenience in handling the upper section, and the protection from the wind afforded by it, speedily secured favor for it in the eyes of manufacturers and users of automobiles.

There is no substantial difference between the wind shield sold and used by the defendant Ford Motor Company in connection with its automobile and that described in the reissue. In defendant's 1913 model the incline of the lower section is somewhat slighter than that of the patent in suit; but this is an immaterial difference, as lessening of wind resistance was nevertheless secured. The upper section was not brought as close to the steering wheel as in complainant's structure, but the shield in its entirety embodied the elements of the combination of claims 2, 3, and 5 in suit; that is, it embodied means for inclining the lower section and hinging it to the upper, and supported both by rods extending to the floor of the automobile rearwardly and downwardly, and means (though not the specific means of complainant) for maintaining adjustment. In the 1914 model marketed by defendant the same combination of elements was employed, save that the upper section was folded from the vertical to a horizontal or parallel position rearwardly and towards the driver; but such varia-

tion was easily made, and does not avoid infringement. Indeed, such manner of folding the upper section was suggested in the specification in suit.

There is nothing in the record to show that the reissue should be held invalid for delay in applying for it, nor is the doctrine of intervening rights applicable to this case. Baldwin v. Abercrombie & Fitch Co. (D. C.) 227 Fed. 455; Motion Picture Patents Co. v. Laemmle et al. (D. C.) 214 Fed. 787.

The reissue patent is valid, the claims 2, 3, and 5 are infringed by the wind shield used and sold by the defendant company, and complainant is entitled to a decree and accounting, with costs.